**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISON**

| | |
|---|---|
| **HEIDI RICHARD**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MASIS STAFFING SOLUTIONS, LLC**,<br><br>Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Heidi Richard ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Masis Staffing Solutions, LLC ("Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## INTRODUCTION

1. This is a civil action arising from Defendant's failure to safeguard certain Personally Identifying Information ("PII" or "Private Information") of thousands of individuals, resulting in Defendant's network systems being unauthorizedly accessed (the "Data Breach").[1]

2. Defendant is a staffing agency founded in Massachusetts in 2015.

3. In its ordinary course of business operations, Defendant collects and retains substantial amounts of Private Information and has a resulting duty to ensure such information is

[1] https://www.dexpose.io/genesis-ransomware-targets-united-personnel-of-masis-staffing-solutions/ (last visited July 16, 2026).

safeguarded from unauthorized disclosure.

4. On or around June 17, 2026, Defendant experienced unauthorized access to its IT Network.[2] Following the Data Breach, the notorious ransomware group "Genesis" claimed responsibility for the Data Breach.[3]

5. Genesis purports to have stolen 700 GB of data related to Defendant's customers and employees, staffing, payroll, company operations, and contracts.[4]

6. Upon information and belief, the stolen data included, but was not limited to, individuals names and Social Security numbers.

7. On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its customers on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendant's failures placed the Class's Private Information in a vulnerable position—rendering them easy targets for cybercriminals.

8. Upon information and belief, Defendant has yet to begin notifying Class Members about the Data Breach.

9. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Plaintiff and Class Members Private Information was exactly that—private. Not anymore. Now, their Private Information is forever exposed and unsecure.

**PARTIES**

10. Plaintiff is a natural person and citizen of Easthampton, Massachusetts, where she

---

[2] *Id.*
[3] *Id.*
[4] https://www.ransomware.live/id/VW5pdGVkIFBlcnNvbm5lbCAoYSBkaXZpc2lvbiBvZiBNYXNpcyBTdGFmZmluZyBTb2x1dGlvbnMpQGdlbmVzaXM (last visited July 16, 2026).

intends to remain.

11. Defendant is a Massachusetts limited liability company with its principal place of business located at 1331 Grafton Street, Worcester, Massachusetts, 01604.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are over 100 putative Class Members, and the Class includes residents of Connecticut, who are therefore diverse from Defendant.[5]

13. This Court has general personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

14. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

***Background on Defendant***

15. Defendant is a full-service staffing firm.

16. On information and belief, Defendant failed to undertake adequate measures to safeguard the Private Information of Plaintiff and the proposed Class Members, including failing to implement industry standards for data security, and failing to properly train customers on cybersecurity protocols, resulting in the Data Breach.

17. In collecting and maintaining the Private Information, Defendant agreed it would

---

[5] As an unincorporated association, Defendant is deemed to be a citizen of the state where it has its principal place of business and the state under whose laws it is organized—i.e., Massachusetts. *See* 28 U.S.C. § 1332(d)(10).

safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their Private Information.

18. Under state and federal law, businesses like Defendant have duties to protect their individuals' Private Information and to notify them about breaches.

19. As a direct and proximate result of Defendant's failures to protect Plaintiff's and the Class Members' sensitive personal information and warn them promptly and fully about the Data Breach, Plaintiff and the proposed Class have suffered widespread injury and damages necessitating Plaintiff seeking relief on a class wide basis.

***Plaintiff and the Class Members entrusted their Private Information to Defendant***

20. Plaintiff and the Class are current and former employees and customers of Defendant.

21. As a condition of receiving services with Defendant, Plaintiff and the Class Members were required by Defendant to provide their sensitive and confidential Private Information.

22. Defendant maintains records of individuals Private Information in the ordinary course of business. These records are stored on Defendant's network systems.

23. Defendant acquired, collected, and stored a massive amount of said Private Information of its employees and customers.

24. By obtaining, collecting, using, and deriving a benefit from its employees' and customers' Private Information, Defendant assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting their Private Information from unauthorized disclosure.

25. Plaintiff has taken reasonable steps to maintain the confidentiality of his Private

Information. Plaintiff, as a former employer, relied on Defendant to keep his Private Information confidential and securely maintained, to use this information for authorized purposes and disclosures only.

26. Plaintiff and the proposed Class Members entrusted their Private Information to Defendant solely for the purposes of receiving services, with the expectation and implied mutual understanding that Defendant would strictly maintain the confidentiality of the information and undertake adequate measures to safeguard it from theft or misuse.

27. Plaintiff and the proposed Class Members would not have entrusted Defendant with their highly sensitive Private Information if they had known that Defendant would fail to take adequate measures to protect it from unauthorized use or disclosure.

***Plaintiff's and the Class Members' Private Information was Improperly Disclosed and Compromised in the Data Breach***

28. As a prerequisite to receiving services with Defendant, Plaintiff and the Class Members disclosed their non-public and sensitive Private Information to Defendant, with the implicit understanding that their Private Information would be kept confidential. This understanding was based on all the facts and circumstances attendant to receiving services, and the express, specific, written representations made by Defendant and its agents.

29. Plaintiff and the Class Members reasonably relied upon Defendant's representations to their detriment and would not have provided their sensitive Private Information to Defendant if not for Defendant's explicit and implicit promises to adequately safeguard that information.

30. On or around June 17, 2026, Defendant experienced unauthorized access to its IT Network.[6] Following the Data Breach, the notorious ransomware group "Genesis" claimed responsibility for the Data Breach.[7]

31. Genesis purports to have stolen 700 GB of data related to Defendant's customers and employees, staffing, payroll, company operations, and contracts.[8]

32. Upon information and belief, the stolen data included, but was not limited to, individuals names and Social Security numbers.

33. Ransomware groups can monetize stolen Private Information and sell it on the dark web as part of a full identity profile.[9] Buyers can then use that information to conduct different types of identity theft or fraud, such as filing a fake tax return, applying for a fraudulent mortgage or opening a bank account while impersonating the victim.[10]

34. And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[11]

35. As a result of this Data Breach, the Private Information of Plaintiff and the proposed Class Members was unauthorizedly disclosed and compromised.

---

[6] *Id.*

[7] *Id.*

[8] https://www.ransomware.live/id/VW5pdGVkIFBlcnNvbm5lbCAoYSBkaXZpc2lvbiBvZiBNYXNpcyBTdGFmZmluZyBTb2x1dGlvbnMpQGdlbmVzaXM (last visited July 16, 2026).

[9] Anthony M. Freed, *Which Data Do Ransomware Attackers Target for Double Extortion?*, MALICIOUSLIFE BY CYBEREASON, https://www.cybereason.com/blog/which-data-do-ransomware-attackers-target-for-double-extortion

[10] *Id.*

[11] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

36. The Data Breach was preventable and a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect customers' Private Information.

37. Thus, on information and belief, Plaintiff's and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***Plaintiff's Experiences and Injuries***

38. Plaintiff is a former customer of Defendant.

39. Upon information and belief, Defendant maintained Plaintiff's Private Information in its IT Network prior to and after the Data Breach.

40. Plaintiff is very careful about the privacy and security of her Private Information. She does not knowingly transmit her Private Information over the internet in an unsafe manner. Plaintiff is careful to store any documents containing her Private Information in a secure location.

41. Upon information and belief, through its Data Breach, Defendant compromised Plaintiff's Private Information including her name and Social Security number.

42. On information and belief, Plaintiff's Private Information was obtained by cybercriminals and has been published on the dark web.

43. Indeed, following the Data Breach, Plaintiff has suffered from an influx of spam calls and communications, indicating that her Private Information is now in the hands of cybercriminals.

44. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use

the stolen and compromised to gather and steal even more information.[12]

45. Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft, placing a lock on her credit, and dealing with spam communications.

46. Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach.

47. Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

48. Plaintiff suffered actual injury from the exposure and theft of her Private Information— which violates her rights to privacy.

49. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

50. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

51. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

52. Today, Plaintiff has a continuing interest in ensuring that her Private

[12] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information

Information—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

53. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. loss of the opportunity to control how their Private Information is used;

b. diminution in value of their Private Information.

c. compromise and continuing publication of their Private Information.

d. out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud.

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud.

f. delay in receipt of tax refund monies.

g. unauthorized use of their stolen Private Information; and

h. continued risk to their Private Information—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the Private Information.

54. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen

Private Information can be worth up to $1,000.00 depending on the type of information obtained.

55. The value of Plaintiff and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "dark web"— further exposing the information.

56. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

57. One way that criminals profit from stolen Private Information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross- referencing and combining two sources of data—first the stolen Private Information, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

58. The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

59. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber- criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

60. Defendant disclosed the Private Information of Plaintiff and Class members for

criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

61. Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Consumers Prioritize Data Security***

62. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[13] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[14]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[15]

---

[13] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited July 16, 2026).
[14] *Id*. at 3.
[15] *Id*.

c. 89% of consumers stated that "I care about data privacy."[16]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[17]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[18]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[19]

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

63. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

64. According to the *2023 Annual Data Breach Report*, the number of data compromises in 2023 nearly doubled compared to 2022.[20] And in 2023, a record 3,205 breaches occurred, exposing the data of approximately 353,027,892 victims.[21]

65. And, in 2024, there were 3,158 data breaches with 1,350,835,988 victim notices, a 211% increase year over year.[22]

66. Cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and

---

[16] *Id*. at 9.
[17] *Id*.
[18] *Id*.
[19] *Id*. at 11.
[20] https://www.idtheftcenter.org/post/2023-annual-data-breach-report-reveals-record-number-of-compromises-72-percent-increase-over-previous-high/ (last visited July 16, 2026)
[21] *Id*.
[22] *2024 Data Breach Report* at 6, Identity Theft Resource Center (Jan. 2025), https://www.idtheftcenter.org/wpcontent/uploads/2025/02/ITRC_2024DataBreachReport.pdf (last visited July 16, 2026).

prepared for, a potential attack.[23]

67. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

68. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

69. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[24] The FTC declared that, *inter alia*, businesses must:

a. protect the personal information that they keep.

b. properly dispose of personal information that is no longer needed.

c. encrypt information stored on computer networks.

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

70. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

71. Furthermore, the FTC explains that companies must:

[23] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[24] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

a. not maintain information longer than is needed to authorize a transaction.

b. limit access to sensitive data.

c. require complex passwords to be used on networks.

d. use industry-tested methods for security.

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

72. The FTC brings enforcement actions against businesses for failing to protect individuals data adequately and reasonably. Thus, the FTC treats the failure— to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

73. In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to individuals' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

74. Several best practices have been identified that—at a *minimum*— should be implemented by businesses like Defendant. These industry standards include: educating all customers; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which customers can access sensitive data.

75. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

76. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

77. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

**CLASS ACTION ALLEGATIONS**

78. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach.

79. Excluded from the Class are Defendant and its subsidiaries and affiliates, officers, directors, and members of their immediate families, and any entity in which it has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

80. Plaintiff reserves the right to amend the class definition.

81. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

82. Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control.

83. Numerosity. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class is comprised of thousands of members.

84. Typicality. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

85. Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

86. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII.

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information

compromised in the Data Breach.

c. if Defendant were negligent in maintaining, protecting, and securing PII;

d. if Defendant breached contract promises to safeguard Plaintiff and the Class's PII.

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it.

f. if Defendant's Breach Notice was reasonable.

g. if the Data Breach caused Plaintiff and the Class injuries.

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

87. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
**Negligence**

**(On Behalf of Plaintiff and the Class)**

88. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

89. Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

90. Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

91. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

92. Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' Private Information.

93. Defendant owed—to Plaintiff and Class members—at least the following duties to:

a. exercise reasonable care in handling and using the Private Information in its care and custody.

b. implement industry-standard security procedures sufficient to reasonably

protect the information from a data breach, theft, and unauthorized.

c. promptly detect attempts at unauthorized access.

d. notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their Private Information.

94. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

95. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

96. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

97. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

98. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant held vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information—whether by malware or otherwise.

99. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

100. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

101. Defendant breached these duties as evidenced by the Data Breach.

102. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' Private Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

103. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

104. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

105. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including fraud,

monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

106. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

107. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

108. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Private Information.

109. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect individuals' or, in this case, individuals' Private Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Private Information.

110. Defendant breached its duties to Plaintiff and Class Members under the FTC Act

by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

111. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

112. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

113. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

114. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including fraud, monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

115. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their

bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

116. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

117. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**<u>THIRD CAUSE OF ACTION</u>**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

118. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

119. Plaintiff and Class members were required to provide their Private Information to Defendant as a condition of receiving services from Defendant. Plaintiff and Class members provided their Private Information to Defendant in exchange for Defendant's services.

120. Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

121. Plaintiff and the Class members accepted Defendant's offers by disclosing their Private Information to Defendant in exchange for services.

122. In turn, and through internal policies, Defendant agreed to protect and not disclose the Private Information to unauthorized persons.

123. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their

Private Information.

124. After all, Plaintiff and Class members would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

125. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

126. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

127. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

128. Defendant materially breached the contracts it entered with Plaintiff and Class members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Private

Information that Defendant created, received, maintained, and transmitted.

129. In these and other ways, Defendant violated its duty of good faith and fair dealing.

130. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

131. Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

132. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

133. This claim is pleaded in the alternative to the breach of implied contract claim.

134. Plaintiff and Class members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) Plaintiff and the Class's payments and (2) using their Private Information to facilitate its business operations.

135. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members. And Defendant benefited from Plaintiff and the Class's payment and from receiving Plaintiff's and Class members' Private Information, as this was used to provide services and facilitate its business operations.

136. Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

137. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' Private Information.

138. Instead of providing a reasonable level of security that would have prevented the

Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

139. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' payment because Defendant failed to adequately protect their Private Information.

140. Plaintiff and Class members have no adequate remedy at law.

141. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

**PRAYER FOR RELIEF**

Plaintiff and Class members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class.

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class.

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class.

D. Enjoining Defendant from further unfair and/or deceptive practices.

E. Awarding Plaintiff and the Class damages including applicable compensatory,

exemplary, punitive damages, and statutory damages, as allowed by law.

F. Awarding restitution and damages to Plaintiff and the Class in an amount determined at trial.

G. Awarding attorneys' fees and costs, as allowed by law.

H. Awarding prejudgment and post-judgment interest, as provided by law.

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting other relief that this Court finds appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Dated: July 16, 2026

By: */s/ Casondra Turner*
Casondra Turner
**MILBERG PLLC**
260 Peachtree Street NW, Suite 2200
Atlanta, Georgia 30303
Tel: (771) 772-3086
cturner@milberg.com

Jeff Ostrow (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
ostrow@kolawyers.com

*Attorneys for Plaintiff and the Proposed Class*